UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESEAN DONALDSON,

        Petitioner,

                                                CASE NUMBER 99-cv-73682

v.

                                                PAUL D. BORMAN

GREG McQUIGGIN,                          UNITED STATES DISTRICT JUDGE

        Respondent.
_____/

**OPINION AND ORDER
DENYING THE HABEAS CORPUS PETITION AND
DENYING A CERTIFICATE OF APPEALABILITY, BUT
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

This matter is pending before the Court on petitioner DeSean D. Donaldson's habeas corpus petition. Petitioner has been convicted of second-degree murder and possession of a firearm during the commission of a felony (felony firearm). He alleges that there was insufficient evidence at trial to support the charged offense (first-degree murder) and that his sentence of thirty-five to seventy years for the murder conviction is cruel and unusual punishment. The Court has found no merit in these claims. Accordingly, the habeas petition will be denied.

**I. Background**

Petitioner was charged with open murder, which includes first- and second-degree murder, and felony firearm. The charges arose from the shooting of nineteen-year-old George Scruggs on June 11, 1995, in Pontiac, Michigan. The prosecution maintained that Petitioner, who was sixteen years old at the time, shot Scruggs because Scruggs owed him $100. The

defense theory was that Scruggs was killed when a gun accidentally discharged during a scuffle between Scruggs and Petitioner. For the murder count, the trial court instructed the jury on first-degree murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter. On January 11, 1996, an Oakland County Circuit Court jury found Petitioner guilty of second-degree murder, MICH. COMP. LAWS § 750.317, and felony firearm, MICH. COMP. LAWS § 750.227b. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction and to a consecutive term of thirty-five to seventy years in prison for the murder conviction.

Petitioner raised his habeas claims on appeal from his convictions. The Michigan Court of Appeals affirmed his convictions and sentence, but remanded the case so that the trial court could complete a section of the sentencing information report. *See People v. Donaldson*, No. 193573, 1997 WL 33339358 (Mich. Ct. App. Nov. 4, 1997) (unpublished). On July 28, 1998, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Donaldson*, No. 110921 (Mich. Sup. Ct. July 28, 1998) (unpublished).

On July 26, 1999, Petitioner filed his habeas corpus petition and a motion for a continuance. Because Petitioner wanted to pursue additional remedies in state court, the Court granted a continuance on October 25, 1999, and closed the case for administrative purposes on March 23, 2001.

Almost eight years later on February 17, 2009, Petitioner moved for permission to file a second or successive habeas petition or to reinstate his habeas petition. He alleged that he had been unable to pursue state court remedies due to his lack of knowledge of legal procedures, inability to retain counsel, misplaced paperwork, and misunderstanding about the status of his

unexhausted claims. On August 5, 2009, the Court re-opened this case and on December 29, 2009, Respondent filed an answer to the petition.

Respondent contends that Petitioner's claims lack merit and that the reinstated petition is barred by the one-year statute of limitations. *See* 28 U.S.C. § 2244(d). The statute of limitations is not a jurisdictional bar to consideration of a habeas petition on the merits. *Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir. 2006). Thus, there is no reason to address the statute of limitations. The Court will proceed to the merits of the petition "in the interest of judicial economy." *Id*.

## II. Standard of Review

Petitioner is entitled to habeas corpus relief only if the state court's adjudication of his claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). And, under 28 U.S.C. § 2254(e)(1), a state court's factual determinations are presumed to be correct unless the habeas petitioner rebuts the presumption of correctness with clear and convincing evidence.

Granting a habeas petition under the "contrary to" clause is only appropriate "if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 326, 412-13 (2000). A state court's decision is an "unreasonable application" of clearly established federal law "if the state

3

court identifies the correct governing legal principle from [the Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, a habeas court must ask "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

### III. Discussion

#### A. Sufficiency of the Evidence

Petitioner alleges that the trial court violated his constitutional rights by instructing the jury on first-degree murder. According to Petitioner, there was insufficient evidence to support a conviction for premeditated murder and, therefore, the trial court's jury instruction on first-degree murder resulted in manifest injustice even though he was convicted of a lesser-included offense.

The Michigan Court of Appeals determined that Petitioner did not preserve this issue for appeal because Petitioner did not move for a directed verdict of acquittal with respect to the first-degree murder charge.[1] The Court of Appeals nevertheless addressed Petitioner's claim and concluded that the prosecution presented ample evidence to establish first-degree premeditated murder.

At least one federal circuit court of appeals has concluded that the submission of a charge to the jury constitutes harmless error when the petitioner is acquitted of the charge. *See Daniels*

---

[1] Respondent has not argued that Petitioner's claim is procedurally defaulted, and the Court is not required to raise the issue *sua sponte*. *Trest v. Cain*, 522 U.S. 87, 89 (1997).

*v. Burke*, 83 F.3d 760, 765 n.4 (6th Cir. 1996) (citing decisions from the District of Columbia Circuit Court of Appeals). The Sixth Circuit was faced with the same issue in *Daniels* and chose to address the merits of the issue rather than conclude that the alleged error was harmless. *See id*. The Court of Appeals stated that, "if there was sufficient evidence from which to conclude that petitioner was guilty of first degree murder, then this argument must fail." *Id*. at 765. In light of the approach taken in *Daniels*, this Court will proceed to analyze whether the evidence was sufficient to sustain the charge of first-degree murder.

### 1. *Jackson v. Virginia*

When reviewing a sufficiency-of-the-evidence claim, a habeas court must examine "the evidence in the light most favorable to the prosecution" to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)).

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. In Michigan, the elements of first-degree, premeditated murder are: (1) the defendant killed the victim and (2) the killing was "willful, deliberate, and premeditated." *People v. Bowman*, 254 Mich. App. 142, 151 (2002) (quoting Mich. Comp. Laws § 750.316(1)(a)).

"To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. [P]remeditation and deliberation characterize a thought

5

process undisturbed by hot blood." *People v. Morrin*, 31 Mich. App. 301, 329-30 (1971) (footnotes omitted). Premeditation and deliberation may be inferred from "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich App. 158, 170 (1992). "A pause between the initial homicidal intent and the ultimate act may, in the appropriate circumstances, be sufficient for premeditation and deliberation." *People v. Plummer*, 229 Mich. App. 293, 301 (1998) (citing *People v. Tilley*, 405 Mich. App. 38, 45 (1979)). "Although there is no specific time requirement, sufficient time must have elapsed to allow the defendant to take a 'second look.'" *Id.* at 300 (citing *People v. DeLisle*, 202 Mich. App. 658, 660 (1993), and *People v. Anderson*, 209 Mich. App. 527, 537 (1995)).

### 2. The Facts

The testimony at trial established that, on June 11, 1995, Gary Dates, Petitioner, and some other young men went to the store together. On their way back from the store, they saw George Scruggs with Isaac Rodgers. Petitioner asked Scruggs for $100, which Petitioner had loaned him. Scruggs said that he was not giving Petitioner anything. Petitioner replied, "Wait until I come back," and left.

Petitioner returned to the area about ten or fifteen minutes later with a gun sticking out of his pants pocket. He approached Rodgers and Scruggs, who had been sitting in a car listening to music. Scruggs said to Petitioner, "So you brought a gun back." Petitioner responded by once again asking for his money. Rodgers reached for Petitioner's gun, which was still in Petitioner's pocket, but Petitioner twisted Rodgers' hand off the gun. Scruggs then charged at Petitioner. Petitioner pushed him away and Scruggs stumbled or fell. When Scruggs approached Petitioner

6

a second time, Petitioner then took out a gun, pulled the trigger, and shot Scruggs in the stomach from a distance of a few feet. After the shooting, Petitioner stood over Scruggs, pointed the gun, and said, "I'll shoot you again." He did not shoot a second time, and when Scruggs walked away, Petitioner told Scruggs that he did not mean to shoot him. He also said, "Don't die on me, man." Scruggs subsequently fell unconscious and was taken to the hospital where he died two days later as a result of complications from the gunshot wound.

Petitioner and his mother testified that both Petitioner and Scruggs fell to the ground during the scuffle. Petitioner also testified that he was armed before he first saw Scruggs and got into the argument about money. He claimed that he did not know the gun was loaded when Scruggs lunged at him and that his finger never touched the trigger. He maintained that he did not shoot Scruggs, nor intentionally cause Scruggs' death.

### 3. Application of *Jackson*

A rational juror could have concluded from the evidence that Petitioner got into an argument with Scruggs, left the area, returned with a gun, and fired a fatal gunshot at Scruggs. Testimony that he was unarmed during the first encounter with Scruggs, but armed when he returned to the area suggests that he premeditated his actions. He had enough time between the initial confrontation with Scruggs and his second encounter with Scruggs to take a second look at his conduct, to premeditate his actions, and to weigh his options. His use of a gun and his threat to shoot Scruggs a second time indicate that he intended to kill Scruggs. Although portions of his and his mother's testimony contradicted the testimony of other eyewitnesses,

> [a] reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is the province of the factfinder to weigh the probative value of the evidence and

> resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Ibid*.

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).

A rational juror could have concluded that Petitioner premeditated the killing of George Scruggs. Therefore, the state appellate court's conclusion that the evidence was sufficient to support the first-degree murder charge and the corresponding jury instruction did not result in a decision that was contrary to, or an unreasonable application of, *Jackson*. Petitioner has no right to habeas relief on the basis of his first claim.

### B. The Sentence

The second and final habeas claim alleges that Petitioner's sentence of thirty-five to seventy years for second-degree murder is excessive and disproportionate to the offense and to the offender. Petitioner contends that his sentence is cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. The Michigan Court of Appeals concluded on review of this claim that Petitioner's sentence of thirty-five to seventy years in prison was proportionate and, therefore, the trial court did not abuse its discretion.

"[T]he Eighth Amendment contains no proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id*. at 1001 (Kennedy, J., concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).

Although the Michigan sentencing guidelines in this case called for a minimum sentence

8

of ten to twenty-five years in prison, the Michigan Court of Appeals noted that

> [Petitioner] committed a brutal and vicious crime, and afterward fled to Mississippi where he was eventually arrested. Throughout his childhood, [Petitioner] was transferred between schools because of fighting and peer problems. [He] had four previous juvenile convictions. As a result of these offenses, [Petitioner] was placed with various juvenile programs, including boot camp. [Petitioner] was involved in serious altercations and received several sanctions throughout his association with these programs. In fact, Children's Village, where [Petitioner] was placed following the shooting, requested that [Petitioner] be transferred to the Oakland County Jail because of his behavior.

*Donaldson*, 1997 WL 33339358, at *1. The Court of Appeals concluded that Petitioner had been "engaged in a continuous pattern of criminal behavior" and "demonstrated a lack of remorse and low potential for rehabilitation."

In addition to these circumstances, the Court is mindful that the Supreme Court did not find it cruel and unusual punishment to sentence Harmelin to life imprisonment without the possibility of parole for possession of more than 650 grams of cocaine. If Harmelin's sentence of life imprisonment without the possibility of parole for a nonviolent crime is constitutional, Petitioner's sentence of thirty-five to seventy years for an unjustified killing is not grossly disproportionate. In fact, the United States Court of Appeals for the Sixth Circuit has held that a minimum sentence of forty years for second-degree murder "is neither 'extreme' nor 'grossly disproportionate' so as to violate the Eighth Amendment." *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *Harmelin*, 501 U.S. at 959). Petitioner therefore has no right to relief on the basis of his sentencing claim.

## IV. Conclusion

The state appellate court's decision did not result in an unreasonable determination of the facts, and it was not contrary to, or an unreasonable application of, Supreme Court precedent.

9

Accordingly, the habeas petition [Dkt. #1] is **DENIED**.

The Court declines to issue a certificate of appealability because reasonable jurists would not disagree with the Court's resolution of Petitioner's claims, nor conclude that the issues warrant encouragement to proceed further. *Banks v. Dretke*, 540 U.S. 668, 674 (2004). However, if Petitioner chooses to appeal this decision, he may proceed *in forma pauperis* on appeal, because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: June 30, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 30, 2010.

S/Denise Goodine
Case Manager